**In re LYKES BROS. STEAMSHIP CO., INC., Debtor.**

**LYKES BROS. STEAMSHIP CO., INC., Plaintiff,**

**v.**

**HANSEATIC MARINE SERVICE, GmBH, Altonia Schiffahrtsgesellschaft MBH & Co. KG, and Andrea Shipping (PTH) Ltd. Singapore, Defendants.**

**Bankruptcy No. 95–10453–8P1.
Adv. No. 97–365.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

March 12, 1997.

Russell M. Blain, Stichter, Riedel, Blain & Prosser, P.A., Tampa, FL, for Lykes Bros. Steamship Co., Inc.

Luc Keyzer, Kegels, Roosendaal, Keyzer, Straatman & Berckmans Advocaten, Antwerpen, Belgium, for Lykes Bros. Steamship Co., Inc.

Paul Steven Singerman, Stroock & Stroock & Lavan, Miami, FL, for Creditors' Committee.

Hanseatic Marine Services GmbH, Hamburg, Germany, Hanseatic Marine Services GmbH, Lubeck, Germany, Peter Dohle Schiffarts KG GmbH & Co., Hamburg, Germany, Stephane Van Moorleghem, Fransen Advocaten, Antwerpen, Belgium, for Hanseatic Marine Service GmbH.

Cynthia P. Burnette, United States Trustee's Office, Tampa, FL.

## ORDER GRANTING PRELIMINARY INJUNCTION AGAINST HANSEATIC MARINE SERVICE, GmbH, ALTONIA SCHIFFAHRTSGESELLSCHAFT mbh & CO., KG, AND ANDREA SHIPPING (PTH) LTD. SINGAPORE

ALEXANDER L. PASKAY, Chief Judge.

THIS CAUSE came on for hearing on March 12, 1997, upon the motion of the Debtor, LYKES BROS. STEAMSHIP CO., INC. ("Lykes" or "Debtor"), pursuant to Rule 65, Federal Rules of Civil Procedure, as applied to this adversary proceeding pursuant to Rule 7065, Federal Rules of Bankruptcy Procedure, seeking the entry of a preliminary injunction and incorporation of the terms of the temporary restraining order entered on March 6, 1997 by the Honorable Paul M. Glenn of this Court. Notice of the hearing to

consider the issuance of a preliminary injunction was given by mail and telefacsimile transmission of this Court's temporary restraining order dated March 6, 1997. The Court, having considered the verified motion and the subsequent motion filed in this proceeding, the complaint, and the record, and having considered the evidence and proffered testimony, finds that the relief requested is appropriate and that a preliminary injunction should be issued. The reasons for the issuance of this injunction are as set forth below.

## I. Background:

The Debtor is a major international liner shipping company and vessel-operating common carrier with roots going back to 1900. Lykes has always been headquartered in the United States, and its vessels regularly carry goods on ocean-going vessels on scheduled itineraries between ports on five continents and between ports in many foreign countries, including Belgium, Italy, and Israel among many others. Lykes has employees and agents around the globe including Antwerp, Genoa, and Haifa. Lykes employs over one thousand persons in the United States and abroad, and some thirty agents and employees in Antwerp, Belgium.

The instant bankruptcy case was filed on October 11, 1995 (the "petition date") under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Chapter 11 of the Bankruptcy Code was designed to provide a single forum to resolve disputes between a debtor and its creditors. A clear purpose of Chapter 11 is to benefit all parties, including the debtor and its creditors, by providing a breathing space to enable a debtor to reorganize. Some of the fundamental principles of Chapter 11 include the desire to maximize the value of the estate for the benefit of all creditors, to promote equal distribution among creditors, and to avoid piecemeal, preferential dismemberment of a debtor's assets. To effect this result, the Bankruptcy Code provides that: (1) an estate is created upon filing the petition pursuant to § 541 of the Bankruptcy Code, which consists of property of the debtor wherever located in the world; and (2) an automatic stay of all actions by creditors against a debtor or its property. In Chapter 11, the debtor proposes a plan of reorganization to maximize value for the general benefit of all creditors, thus avoiding a mad scramble for assets. In this case, Lykes has proposed its Plan of Reorganization, which is currently scheduled for a hearing on April 2, 1997, to consider confirmation of the plan.

Prior to the petition date, Lykes chartered a vessel known as the M/V ALTONIA from an entity known as Altonia Schiffahrtsgesellschaft mbh & Co. KG ("Altonia"), the owner of the M/V ALTONIA, under a charter agreement dated on or about April 10, 1992. The M/V ALTONIA was returned to the owner by Lykes prior to the petition date. Also prior to the petition date, Lykes chartered another vessel known as the M/V ARABELLA from an entity known as Andrea Shipping (PTH) Ltd. Singapore ("Andrea"), the owner of the M/V ARABELLA, under a charter agreement dated on or about April 10, 1992. The M/V ARABELLA was also returned to the owner by Lykes prior to the petition date.

Both Altonia and Andrea claim that Lykes owes amounts based upon pre-petition breaches of the aforementioned charters. Specifically, Altonia claims an amount approximating $130,000, and Andrea claims an amount approximating $30,000. The record of this Court reveals that, on or about January 2, 1996, Andrea filed a proof of claim in this case as claim number 289 in the amount of $36,605.23. The attorney or agent that signed Andrea's proof of claim is, as stated on the face of the claim, Peter Dohle Schiffarts KS, from Hamburg, Germany. This entity is also the agent of Altonia pursuant to Addendum No. 3 to the time·charter with respect to the M/V ALTONIA.

On October 12, 1995, this Court entered its Order on Emergency Motion for Determination of Application of § 362 Stay or, in the Alternative, for Extension of Stay (the "Stay Order"). This Order was widely publicized, and was reported in West's Bankruptcy Reporter at *In re Lykes Bros. Steamship Co., Inc.*, 191 B.R. 935 (Bkrtcy.M.D.Fla.1995).

On or about October 16, 1995, five days after Lykes had filed its Chapter 11 petition,

in contravention of the automatic stay and the Stay Order, Andrea and Altonia purportedly assigned their claims against Lykes to a company known as Hanseatic Marine Service GmbH ("Hanseatic"). Hanseatic is reportedly an entity organized and existing under the laws of Germany. The Debtor asserts that its research reflects that Hanseatic appears to have been created on or about October 20, 1995 (therefore, after the assignments). In the assignment documents, the Defendants appear to have attempted to conceal the purported assignment by requiring confidentiality. The assignment documents state on their face that "[p]articular Lykes Bros., Inc. shall at the moment not be informed about the assignment." It is not unreasonable to infer that Hanseatic was created and the claims assigned to Hanseatic to avoid the automatic stay, and to that extent, violate the automatic stay and this Court's October 12, 1995 Stay Order.

It should be noted that there are thousands of creditors in this Chapter 11 case in locations around the globe. This Court has presided over contested matters and adversary proceedings involving Mitsui Engineering & Shipping Co., Ltd. (Japan), den Norske Bank (Norway), Kreditanstalt für Wiederaufbau (Germany), Mitsubishi Heavy Industries, Ltd. (Japan), ICE (Gibraltar), Ltd. (United Kingdom), Bridgehead Container Services, Inc. (United Kingdom), and numerous other non-U.S. creditors. Until recently, no domestic or foreign creditor had openly violated either the automatic stay or the Stay Order. Thousands of creditors from Asia, Europe, South America, and around the globe have respected the jurisdiction of this Court over this case and, in bringing their disputes to this central forum, have relied upon the fact that other creditors would do likewise.

The peace was broken days ago by the Defendants in this case. On March 6, 1997 at approximately 4:00 p.m. Belgian time, Hanseatic procured the arrest of the M/V STELLA LYKES (formerly named the M/V PRESIDENT GARFIELD) in a court in Belgium in order to compel payment of the pre-petition claims purportedly assigned by Andrea and Altonia. Hanseatic moreover refused to cause the arrest of the M/V STEL-

LA LYKES to be lifted without the posting of a bond or guaranty.

The Debtor immediately commenced this adversary proceeding seeking, among other things, the entry of a temporary restraining order and the issuance of a preliminary and permanent injunction against the Defendants. This Court, the Honorable Paul M. Glenn presiding, entered a temporary restraining order on March 6, 1997 at 7:35 p.m. Tampa, Florida, U.S.A. time. This Court scheduled a hearing, with notice to all parties, for March 12, 1997 at 8:30 a.m. to consider extension of the temporary restraining order or issuance of a preliminary injunction, and to consider further relief against the Defendants.

The March 6, 1997 Order was served on Hanseatic and the Defendants. Notably, the Debtor has filed with this Court correspondence received from Hanseatic after service of the March 6, 1997 Order in which Hanseatic seeks to compel arbitration of its claims in further violation of the automatic stay and the Stay Order.

The Court will first address its jurisdiction over the Defendants.

## II. Jurisdiction:

██ Whether this Court can exercise personal jurisdiction over the Defendants depends upon whether the Defendants have the requisite minimum contacts with the United States at large. Clearly, the Bankruptcy Court has personal jurisdiction of over Andrea Shipping because Andrea filed a claim. Peter Dohle Schiffarts KG ("Dohle"), its agent from Hamburg, Germany filed a claim on its behalf.

Andrea Shipping (PTH) Ltd. Singapore ("Andrea"), the owner of the M/V ARABELLA, filed an unsecured claim in the case on or about January 2, 1996. The claim was in the amount of $36,605.23, and was given claim number 289. On its face, the claim relates to the charter between Lykes and Andrea. By uniform authority of longstanding jurisprudence, Andrea has therefore consented to the jurisdiction of the United States Bankruptcy Court. *See e.g. Langenkamp v. Culp*, 498 U.S. 42, 111 S.Ct. 330, 112

L.Ed.2d 343 (1990) (Supreme Court held that creditors who file proofs of claim bring themselves within the equitable jurisdiction of the bankruptcy court); *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966); *Gardner v. New Jersey*, 329 U.S. 565, 573, 67 S.Ct. 467, 471–72, 91 L.Ed. 504 (1947) ("[H]e who invokes the aid of the bankruptcy court by offering a proof of claim and demanding its allowance must abide by the consequences of that procedure") (*citing Wiswall v. Campbell*, 93 U.S. 347, 351, 23 L.Ed. 923 (1876) ("A creditor who offers proof of his claim, and demands its allowance, subjects himself to the dominion of the court, and must abide the consequences."); *In re Schwinn Bicycle Co.*, 182 B.R. 526, 530 (Bkrtcy.N.D.Ill.1995) ("this Court finds that by filing its Proof of Claim, Reynolds consented to the exercise of personal jurisdiction"); *In re American Export Group Intern. Services, Inc.*, 167 B.R. 311, 316 (Bkrtcy.D.Colo.1994) ("above, by filing a proof of claim, Zueblin has purposefully availed itself of the benefits of this forum and thus is deemed to have submitted to personal jurisdiction. This consent to personal jurisdiction constitutes the minimum contacts due process requires").

Having voluntarily filed its proof of claim in this reorganization case, Andrea purposefully submitted itself to this Court's jurisdiction and was obligated to comply with its orders and with its procedures. Neither it nor its purported transferee did so.

Prior to the petition date, Lykes chartered a vessel known as the M/V ALTONIA from Altonia Schiffahrtsgesellschaft mbh & Co. KG ("Altonia"), the owner of the M/V ALTONIA, under a time charter dated on or about April 10, 1992. Dohle also appears as the agent for Altonia on the charter. The M/V ALTONIA was returned to the owner by Lykes prior to the petition date.

■ The jurisdictional analysis pertaining to Altonia reaches the same result as for Andrea, for a different reason. In this regard, the Second Circuit Court of Appeals has listed three types of actions by which a foreign corporation may satisfy the minimum contacts requirement and thus comport with traditional notions of fair play and substantial justice:

(1) transacting business in the United States;

(2) doing an act in the United States; or

(3) having an effect in the United States by an act done elsewhere.

*Leasco Data Processing Corp. v. Maxwell*, 468 F.2d 1326, 1340 (2nd Cir.1972). *See also Eskofot A/S v. E.I. Du Pont De Nemours & Co.*, 872 F.Supp. 81, 87 (S.D.N.Y.1995).

■ Altonia has minimum contacts with the United States through transacting business and doing acts in the United States. These contacts appear from the record to include the following:

1.  entering into a charter with Lykes, a U.S. citizen which provided for use of its vessel the M/V ALTONIA in the foreign commerce of the United States with other citizens of the United States;

2.  agreeing in the charter to deliver the vessel in New York;

3.  agreeing in the charter to accept redelivery of the vessel in New York;

4.  providing in the charter and allowing under the charter for its vessel to call on ports within the United States, specifically New York, New York, Baltimore, Maryland, Charleston, South Carolina, and Miami, Florida, which would have required using United States citizens to load and unload cargo at those ports for the benefit of shippers to and from points in the United States in United States commerce;

5.  providing in the charter that all bills of lading issued under the charter be subject to the Carriage of Goods by Sea Act of the United States (1936) (page 2, lines 566–575), and that general average be adjusted according to the laws at the port of New York (page 3, lines 619–623);

6.  warranting under the charter that the owner (Altonia) would become signatory to the sea carrier initiative agreement pursuant to the U.S. Anti–Drug Abuse Act of 1986 (page 8, lines 887–892);

7. entering into a Certificate of Financial Responsibility—Water Pollution with the United States Coast Guard (which provides that the owner prove insurance for the accidental discharge of hazardous substances) (page 11, lines 1080–1101); and

8. providing within the Charter that "the Owners shall remain responsible for the navigation of the Vessel, acts of pilots and tug boats, insurance, crew, and all other similar matters, same as when trading for their own account" (page 13, lines 1207–1211), knowing that the vessel would call on ports within the United States.

Thus, this Court is satisfied that it has personal jurisdiction over Altonia. While nothing in the record warrants the conclusion that Hanseatic is subject to the personal jurisdiction of this Court, it cannot be gainsaid that this Court's jurisdiction under 28 U.S.C. § 1334(d) grants this Court jurisdiction over all property of the estate wheresoever located.

### III. Violations of the Automatic Stay and the Stay Order:

■■■■ As noted earlier, this Court has exclusive and extraterritorial jurisdiction over the M/V STELLA LYKES as property of Lykes' bankruptcy estate. Further, the automatic stay imposed by 11 U.S.C. § 362 extends beyond the territorial boundaries of the United States. *See, e.g., In re McLean Industries, Inc.,* 74 B.R. 589, 601 (Bkrtcy. S.D.N.Y.1987) ("[t]he automatic stay applies extraterritorially"). Specific statutory authority for this position is found at 28 U.S.C. § 1334(e), which grants United States courts exclusive jurisdiction over "all of the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate." It does not matter that the property of the estate, in this instance the M/V STELLA LYKES, was at the time of the arrest located outside the territorial borders of the United States. Section 541(a) makes it clear that property of the estate is not so confined but consists of all property "wherever located" in which the debtor has an interest. *See, e.g., In re McLean Indus-*

*tries, Inc.,* 68 B.R. 690, 694 (Bkrtcy.S.D.N.Y. 1986).

■■■■ Notably, the *McLean* case involved the specific facts presented herein, namely the post-petition arrest of a vessel subject to a United States bankruptcy case. In *McLean,* the court found that the creditor who had caused the arrest was in willful violation of the automatic stay, and entered an injunction and a daily monetary sanction.

As stated by the Court in *McLean:*

[A] proceeding involving a post-petition arrest of estate property clearly is one "affecting the liquidation of the assets of the estate" as provided in § 157(b)(2)(O). In causing process to issue with respect to a debtor's property in violation of § 362(a) or a court order, a creditor is affecting the very ability of the bankruptcy court to govern such a liquidation and to fairly distribute same and is tampering with the exclusive jurisdiction over all such property afforded by 28 U.S.C. § 1334(d) [now renumbered as § 1334(e) ].

*In re McLean Industries, Inc.,* 68 B.R. 690, 694–695 (Bkrtcy.S.D.N.Y.1986). Clearly, therefore, (1) this Court has exclusive jurisdiction over the M/V STELLA LYKES under United States law; (2) this Court had such jurisdiction over the M/V STELLA LYKES prior to the arrest of the vessel in Belgium; and (3) the actions of Hanseatic are in willful violation of the jurisdiction of the Bankruptcy Court, the automatic stay imposed by 11 U.S.C. § 362, and this Court's Stay Order.

■■■■ Several violations occurred under these facts. First, in effecting the arrest of the M/V STELLA LYKES in apparently knowing contravention of the automatic stay, Hanseatic has taken an action that it clearly knew of reasonably should have foreseen would have an effect in the United States. The clear intent of the seizure was to compel payment by a Chapter 11 debtor of the assigned claims. The actions clearly have effect in the United States inasmuch as they disrupt the Debtor's business with customers around the globe and also disrupt this Court's administration of this estate. The action also clearly affects the commerce of

the United States and its citizens. Hanseatic knew or reasonably should have known that its conduct in seizing the M/V STELLA LYKES would have an effect in the United States. Consequently, this Court finds that the exercise of jurisdiction over Hanseatic does not violate traditional notions of fair play and substantial justice. Second, Altonia and Andrea transferred their claims in direct violation of this Court's October 12, 1995 Stay Order. Third, it appears from the face of the assignment that the parties intended to keep this transfer secret as reflected in the assignment documents. Fourth, Hanseatic violated Rule 3001(e)(2), Federal Rules of Bankruptcy Procedure, which provides as follows:

> [i]f a claim ... has been unconditionally transferred after the proof of claim has been filed, evidence of the terms of the transfer shall be filed by the transferee....

F.R.B.P. 3001(e)(2). Fifth, Hanseatic caused the arrest of the M/V STELLA LYKES. Finally, Hanseatic subsequently has attempted to compel arbitration of its claims in the United Kingdom.

In this case, Lykes has proposed its Plan of Reorganization which is currently scheduled for a confirmation hearing on April 2, 1997. Confirmation of a plan is a critical point in the Chapter 11 process. The timing of the actions taken by the Defendants in this case, in view of the procedural juncture of this case, is critical. The Defendants appear to be attempting to increase their individual benefit in preference over and to the specific detriment of all other creditors in this case. The Defendants have acted in disregard of the rights of all of the thousands of other creditors in this case around the globe.

The Debtor's motion is well taken and should be granted. Further, it is appropriate to enter a preliminary injunction against the Defendants as set forth herein. Based on the foregoing, it is

ORDERED, ADJUDGED and DECREED that the Debtor's Motion Seeking Entry of Preliminary and Permanent Injunction Against Hanseatic Marine Service, GmbH, et al. for Violations of the Automatic Stay and this Court's October 12, 1995 Order be, and the same hereby is, granted as to the request for issuance of a preliminary injunction. It is further

ORDERED, ADJUDGED AND DECREED that a preliminary injunction is hereby entered against Hanseatic Marine Service, GmbH, Altonia Schiffahrtsgesellschaft mbh & Co. KG, and Andrea Shipping (PTH) Ltd. Singapore, the Defendants named in this adversary proceeding, and the Defendants be, and the same are hereby, restrained and enjoined from taking any further steps, legal or otherwise, which are designed to effect collection of the claimed prepetition debt allegedly owed by the Debtor to the Defendants. It is further

ORDERED, ADJUDGED AND DECREED that the named Defendants, their attorneys, agents and servants acting on their behalf be, and the same are hereby, enjoined and prohibited from proceeding either to arrest the vessel again or to institute any additional legal proceeding in any court, with the proviso that this preliminary injunction shall not be construed to prohibit the named Defendants from defending their actions in the currently pending legal proceeding in Antwerp, Belgium.

ORDERED, ADJUDGED AND DECREED that Hanseatic shall immediately dissolve the process against the M/V STELLA LYKES, dismiss Lykes from any process against Lykes or property of the estate, and release the M/V STELLA LYKES and the Belgian bank guarantee. It is further

ORDERED, ADJUDGED AND DECREED that Hanseatic, Andrea, and/or Altonia immediately shall cease further collection activity against Lykes, anywhere in the world. It is further

ORDERED, ADJUDGED AND DECREED that Hanseatic, Andrea, and/or Altonia shall immediately cease interference with property of the estate, wherever located, including the M/V STELLA LYKES, and all other vessels, cargo, containers, accounts, and other property of Lykes' estate. It is further

ORDERED, ADJUDGED AND DECREED that in accordance with Rule 65(d),

Federal Rules of Civil Procedure, as applied to this adversary proceeding pursuant to Rule 7065, Federal Rules of Bankruptcy Procedure, this preliminary injunction is hereby binding upon the parties to this suit, as well as their officers, agents, servants, employees, attorneys, and all those persons in active concert or participation with the foregoing. It is further

ORDERED, ADJUDGED AND DECREED that this injunction shall take effect immediately upon entry of this Order, shall supplement and continue in effect the relief granted by the temporary restraining order in effect by virtue of this Court's March 6, 1997 Order, and shall remain in effect until further order of this Court. It is further