## In re PRO–FIT INTERNATIONAL LIMITED, Debtor in a Foreign Proceeding.

## In re Pro–Fit International Limited, Debtor in a Foreign Proceeding.

## In re Genesis Bradford Limited, Debtor in a Foreign Proceeding.

### Nos. LA08–17043SB, LA08–17049SB, LA08–17054SB.

United States Bankruptcy Court, C.D. California.

July 11, 2008.

Joel K. Belway, San Francisco, CA, for Debtors.

Jill Sturtevant, Los Angeles, CA, for U.S. Trustee.

## Amended Opinion Granting Interim Relief to Chapter 15 Debtors Under 11 U.S.C. § 1519

SAMUEL L. BUFFORD, Bankruptcy Judge.

### I. Introduction

The recently appointed joint administrators of three chapter 15 debtors, Pro–Fit Holdings Limited ("Pro–Fit Holdings"), Pro–Fit International Limited ("Pro–Fit International"), and Genesis Bradford Limited ("Genesis") (collectively, "Pro–Fit"), bring this application for provisional relief under § 1519[1] to apply § 362 to stay the enforcement of a U.S. district court order, following judgment on the merits, attaching the U.S. assets of Pro–Fit Hold-

---

1. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C.A. §§ 101–1532 (West

2008) and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

ings and Pro–Fit International. These three related corporations are currently in administration under the applicable bankruptcy law in the United Kingdom, a reorganization procedure akin to the U.S. chapter 11. The joint administrators are awaiting a hearing on their application for recognition of the U.K. proceedings as "foreign main proceedings" as defined by § 1502(4). Judgment creditor Libra Securities LLC ("Libra") opposes the motion mainly on the grounds that the applicants have not followed the "standards, procedures, and limitations applicable to an injunction" pursuant to § 1519(e).

The court holds that the relief requested falls outside of § 1519(e), because it is not an injunction or temporary restraining order. Rather, the relief requested is the application of § 362 on a provisional basis, which does not require an adversary proceeding. Consequently, pursuant to § 1519, the court orders that § 362 apply in these chapter 15 cases with respect to Pro–Fit's U.S. assets pending this court's ruling on the application for recognition of the foreign proceedings as foreign main proceedings. In addition, by consent of the petitioners, and at the request of a creditor that has expressed an interest in purchasing substantially all of Pro–Fit's assets, § 363 also applies provisionally with respect to the debtors' U.S. assets pending the recognition determination.

**2.** Pursuant to Schedule B1 of the Insolvency Act of 1986, an administrator is an officer of the court, appointed by order of the court, or by the company or its directors, with the objective of (a) rescuing the company as a gong concern, (b) achieving a better result for the company's creditors as a whole than would be likely if the company were wound up (without first being in administration), or (c) realizing property in order to make a distribution to one or more secured or preferential creditors.

**3.** Court Case No. 473 of 2008.

## II. Relevant Facts

Petitioners J.N.R. Pitts and M.E.G. Saville were appointed joint administrators [2] of Pro–Fit International on April 4, 2008, and of Pro–Fit Holdings and Genesis Bradford on April 7, 2008. These three related companies are registered under the laws of the United Kingdom, and are currently in administration in the High Court of Justice of England and Wales, Leeds District Registry.[3] Among their assets, the companies claim the rights to certain patents relating to waistband technology used in manufacturing athletic clothing, and have licensees both in the United Kingdom and the United States.

In light of Pro–Fit's interests in the United States, the administrators filed a chapter 15 petition for recognition [4] on May 21, 2003 for each of the three companies. In addition to Official Form 1, each petition includes a "Verified Petition for Recognition of Foreign Main Proceeding Pursuant to Sections 1515 and 1517 of the Bankruptcy Code and Related Relief," which requests a hearing for recognition of the foreign proceeding as a foreign main proceeding.[5] To each petition is attached the notices of appointment of the administrators in each of the three cases in Leeds, England. Further, each petition is accompanied by a notice of related cases, which include the pending administration cases in the United Kingdom [6] and pending litigation in the United States.

**4.** Section 1504 provides: "A case under [chapter 15] is commenced by the filing of a petition for recognition of a foreign proceeding under section 1515."

**5.** The hearing on these motions, originally set for July 8, 2008, is now scheduled on July 23, 2008.

**6.** While each of the foreign proceedings is pending in the High Court in Leeds, the foreign administrators do not have a court order from England appointing them as administrators because English law does not require

In addition to their intellectual properties, Pro–Fit Holdings and Pro–Fit International are parties to three pending civil actions in the District Court for the Central District of California.[7] Two of these actions were commenced in 2004 and 2007 by Tag–It Pacific Inc. (known today as Talon International Inc.), a U.S. licensee of Pro–Fit's waistband patents. Neither case is active. Talon's main concern in this chapter 15 case is not its pending litigation with Pro–Fit, but rather its interest in purchasing, in due course, substantially all of Pro–Fit's assets (either pursuant to § 363 or pursuant to applicable English law).

Libra commenced a third action against Pro–Fit Holdings and Pro–Fit International in 2007 in the U.S. District Court for the Central District of California. In that action, Libra obtained summary judgment on May 19, 2008. Pursuant to this judgment, Libra obtained an order[8] on May 21, 2008 (after the filing of these chapter 15 cases) attaching the U.S. assets of Pro–Fit Holdings and Profit International, including the stream of royalties from the U.S. patents.

Libra's writ of attachment prompted the debtors' foreign administrators to file an *ex parte* application for an order to show cause, on notice to counsel for both Talon and Libra, for a preliminary injunction and for an interim temporary restraining order. At the hearing, however, the petitioners changed their request to seek the imposition of the automatic stay under § 362 as to the two actions involving Talon, and most urgently the action involving Libra. Libra initially objected to this change in position, but was ultimately satisfied with an opportunity at the hearing to address petitioners' request for a stay under § 362, rather than a temporary restraining order and injunction.[9]

Libra opposes the application before the court on three grounds. First, Libra contends that § 1519(e) requires the filing of an adversary proceeding, which the foreign administrators have not done, to obtain the relief requested. Second, Libra argues that the foreign administrators have made no showing of imminent harm to justify the entry of a temporary restraining order. Finally, Libra maintains that the foreign administrators have provided no explanation for their delay in filing these chapter 15 cases, pursuant to which they now request relief on an emergency basis.

Talon, on the other hand—a licensee of the debtors who is also in litigation with them—does not oppose the emergency relief requested. On the contrary, Talon's concern is that the joint administrators, since the date of their appointment, have been working at less than arm's length with the insiders of Pro–Fit to consum-

---

such an order for the entry of a corporate debtor in administration under the applicable insolvency law.

**7.** Those actions are: (a) *Libra Securities LLC v. Pro–Fit Int'l Ltd.*, No. 2:07–cv–02520–SVW–JWJ; (b) *Tag–It Pacific Inc. v. Pro–Fit Holdings Ltd.*, No. 2:04–cv–02694–AHM–RC; and (c) *Tag–It Pacific Inc. v. Pro–Fit Holdings Ltd.*, No. 2:07–cv–01484–AHM–RC.

**8.** Federal law in the United States does not provide directly for a writ of attachment. In-

stead, post-judgment remedies are provided by the law of the state where the federal court sits. *See* Rule 9014(c) (making Rule 7064 applicable to contested matters); Rule 7064 (adopting by reference FED. R. CIV. P. 64).

**9.** To protect Talon's due process rights, the court set a further hearing two days later to consider further the propriety of imposing the automatic stay of § 362 on the creditors in these three cases. The next day Talon informed the court that it would not take advantage of the further hearing on this issue.

mate a sale transaction to insiders. Because it has an interest in buying the worldwide assets of the respective debtors. Talon welcomes the imposition of a stay on the debtors' assets, and further requests that the provisions of § 363 be made applicable for all worldwide assets of Pro–Fit during the gap period, pursuant to § 1519, until the foreign proceeding is recognized (at which time § 363 will apply pursuant to § 1520).

## III. Discussion

This application for provisional relief raises three issues under the new chapter 15. The first issue is whether § 1519(e) should be read broadly to require the filing of an adversary proceeding to obtain any relief under § 1519. The second issue is whether, even on a narrower reading of § 1521(e), the adoption § 362 for a chapter 15 case is in the nature of issuing an injunction that requires an adversary proceeding. The third issue is whether the court may grant provisional relief under § 1519 by adopting other sections of the bankruptcy code and making them applicable in a particular chapter 15 case on a provisional basis pending a decision on recognition.

### A. Background of Chapter 15

■ Congress enacted chapter 15 in 2005 as an implementation of the Model Law on Cross–Border Insolvency ("the Model Law") promulgated by the United Nations Commission on International Trade Law ("UNCITRAL") in 1997.[10] The language of chapter 15 tracks the Model Law, with adaptations designed to mesh with United States law.[11] Congress prescribed a rule of interpretation that expressly requires United States courts to take into account the statute's international origin and to promote applications of chapter 15 that are consistent with versions of the Model Law adopted in other jurisdictions.[12]

However, the matters presently before the court in this case do not implicate provisions of chapter 15 derived from the Model Law. Instead, they arise from provisions that Congress specially added in adapting the Model Law to the U.S. bankruptcy code.

### B. Pendency of Foreign Proceeding and Qualification of Administrators

■ Section 1515 imposes the following requirements on a chapter 15 petition for recognition:

(a) A foreign representative applies to the court for recognition of a foreign proceeding in which the foreign representative has been appointed by filing a petition for recognition.

(b) A petition for recognition shall be accompanied by—

(1) a certified copy of the decision commencing such foreign proceeding and appointing the foreign representative;

(2) a certificate from the foreign court affirming the existence of such

---

**10.** The United States was an active participant in the discussions leading to the adoption of the Model Law. *See* H.R. REP. No. 109–31, at 105–07 (2005), U.S. CODE CONG. & ADMIN. NEWS 2005, at 88; Jay Lawrence Westbrook, *Chapter 15 at Last*, 79 AM. BANKR. L.J. 713, 719–20 (2005). *See also In re Bear Stearns High–Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 127 n. 3 (Bankr.

S.D.N.Y.) (Lifland, J.) (stating that Judge Lifland, Professor Jay Westbrook and Daniel Glosband were among the authors of the Model Law).

**11.** H.R. REP. No. 109–31, at 105–07; Westbrook, *supra* note 11, at 719.

**12.** *See* § 1508; H.R. REP. No. 109–31, at 109–10.

foreign proceeding and of the appointment of the foreign representative; or

(3) in the absence of evidence referred to in paragraphs (1) and (2), any other evidence acceptable to the court of the existence of such foreign proceeding and of the appointment of the foreign representative.

(c) A petition for recognition shall also be accompanied by a statement identifying all foreign proceedings with respect to the debtor that are known to the foreign representative.

(d) The documents referred to in paragraphs (1) and (2) of subsection (b) shall be translated into English. The court may require a translation into English of additional documents.

While compliance with subparagraphs (c) and (d) is clear, compliance with subparagraph (b) requires further explanation.

■■■ The Insolvency Act 1986 for England and Wales [13] authorizes a company to enter into administration by filing a petition with the high court.[14] After filing the case, the company may elect to enter into "administration," pursuant to which one or more administrators are appointed by the directors of the company, and not by the court, to reorganize or to liquidate the company.[15] Under this procedure, there is no court order for the appointment of the administrators. In these cases, instead of such a court order, the debtors have each attached a notice of appointment signed by Phillip Morris, a Leeds solicitor,[16] giving notice of their appointment. The court provisionally finds that these notices are sufficient, pursuant to § 1515(b)(3), to show both the existence of the foreign proceedings and the appointment of the foreign representatives.[17]

## C. Provisional Relief Under § 1519

■■■ To authorize relief during the gap period between the time of filing a petition for recognition and the court ruling on recognition, § 1519(a) provides that "the court may grant relief of a provisional nature," at the request of the foreign representative, where relief is urgently needed to protect the assets of the debtor or the interests of the creditors.[18]

13. *See* Margaret R. Cole, *The Insolvency Laws of the United Kingdom,* in 2 INTERNATIONAL INSOLVENCY, U.K. (Carl Felsenfeld et al., eds. 2003). The bankruptcy law in the United Kingdom is not unified: there is one law for England and Wales, one for Scotland and one for Northern Ireland. All three laws were enacted by the United Kingdom Parliament in Westminster, and they vary mainly in details that are not relevant herein. Because the administration for the companies in these chapter 15 cases is pending in Leeds, England, it is the law for England and Wales that applies to the administration of these three entities.

14. *See* Insolvency Act 1986, ch. 45, Pt. II, s. 9. Administration may also be commenced by the directors of a company without filing a case at all under the Bankruptcy Act 1986. *See id.* Schedule B1, ¶ 22(2).

15. *See id.*

16. The practice of law in the United Kingdom is not unified. Most of what corresponds to U.S. law practice is carried out by solicitors, who often practice in law firms of substantial size. Most court appearances, however, are made by barristers, who are separately licensed and are hired by solicitors to conduct court proceedings.

17. The purpose of § 1515(b) is to circumvent the usual requirement of exequatur for the proof of a foreign legal document, which requires a very complex and time-consuming procedure involving certifications by both foreign and U.S. officials.

18. Section 1519 states:

(a) From the time of filing a petition for recognition until the court rules on the petition, the court may, at the request of the foreign representative, where relief is urgently needed to protect the assets of the

As with any provisional relief under § 1519, the court's preliminary order lasts until the court enters an order on recognition.[19] If the court ultimately grants recognition pursuant to § 1517, a main administrative order may then replace the interim order pursuant to § 1521(a), which authorizes the court to grant "any appropriate relief" after the recognition of a foreign proceeding as either a main or nonmain proceeding.[20]

### 1. Applicability of § 1519(e)

Libra argues that the joint administrators have not properly followed the procedural requirements to bring before the court the imposition of the § 362 stay. Libra contends that, pursuant to § 1519(e), no provisional relief under § 1519 can be granted unless the movant complies with the standards, procedures, and limitations applicable to an injunction, which are provided under Rules 7001 and 7065.

Under this interpretation, relief is available to stay Libra's execution against the debtors' assets during the gap period between petition and recognition only pursuant to an adversary proceeding under Rule 7001. In addition, such injunctive relief would be subject to the standards and limitations applicable generally to injunctions (which the debtors have not attempted to satisfy).

### a. Injunctions—Standards, Procedures & Limitations

[8] Rule 7001 imposes specific procedures for obtaining an injunction.[21] A proceeding to obtain an injunction must comply with the adversary proceeding provisions of Part VII: the applicant must file a complaint under Federal Rule of Bankruptcy Procedure 7001, naming the parties against whom injunctive relief is sought, that complies with the federal pleading requirements.

■ The standards for obtaining a preliminary injunction are substantial. Under Ninth Circuit law, a party seeking a preliminary injunction (usually the plaintiff) must demonstrate either: (1) a likelihood of success on the merits and the possibility

---

debtor or the interests of the creditors, grant relief of a provisional nature, including—

(1) staying execution against the debtor's assets;

(2) entrusting the administration or realization of all or part of the debtor's assets located in the United States to the foreign representative or another person authorized by the court, including an examiner, in order to protect and preserve the value of assets that, by their nature or because of other circumstances, are perishable, susceptible to devaluation or otherwise in jeopardy; and

(3) any relief referred to in paragraph (3), (4), or (7) of section 1521(a).

(b) Unless extended under section 1521(a)(6), the relief granted under this section terminates when the petition for recognition is granted.

(c) It is a ground for denial of relief under this section that such relief would interfere with the administration of a foreign main proceeding.

(d) The court may not enjoin a police or regulatory act of a governmental unit, including a criminal action or proceeding, under this section.

(e) The standards, procedures, and limitations applicable to an injunction shall apply to relief under this section.

(f) The exercise of rights not subject to the stay arising under section 362(a) pursuant to paragraph (6), (7), (17). or (27) of section 362(b) or pursuant to section 362(n) shall not be stayed by any order of a court or administrative agency in any proceeding under this chapter.

**19.** *See* § 1519(a).

**20.** *See* § 1521(a).

**21.** Rule 7001 provides in relevant part: An adversary proceeding is governed by the rules of this Part VII: The following are adversary proceedings: ... (7) a proceeding to obtain an injunction or other equitable relief ...

of irreparable injury; or (2) that serious questions going to the merits were raised and the balance of hardships tips sharply in its favor.[22] A preliminary injunction is most often requested to preserve the status quo pending a decision by the court on the merits of the underlying dispute.[23]

■■■ Rule 65 of the Federal Rules of Civil Procedure, which Rule 7065 makes applicable in adversary proceedings, imposes limitations on a temporary restraining order (which is a form of preliminary injunction). Such an order must "describe in reasonable detail the act or acts sought to be restrained," must "set forth the reasons for its issuance," and is binding only upon the parties to the action (including their officers, agents, servants, employees and attorneys), and upon those persons in active concert or participation with them who receive actual notice of the order. Further requirements and limitations apply if the temporary restraining order is granted *ex parte (i.e.,* without notice to the party enjoined).[24]

■■■ The question before the court is whether the foreign administrators in these chapter 15 cases must comply with the foregoing requirements to permit the court to issue an order imposing the automatic stay on all U.S. creditors on a preliminary basis under § 1519. To make this determination, we look at three considerations: the consequences in § 1519 of applying this interpretation; the larger context in which this provision of § 1519 appears; and the nature of the § 362 automatic stay.

### b. Applicability of Injunction Standards to § 1519 Relief

While one could perhaps read 1519(e) as broadly as Libra contends, such a reading would impose procedural barriers that are unknown in the bankruptcy law to the availability of at least some § 1519 remedies. For example, § 1519(a)(3) authorizes "any relief referred to in paragraph (3), (4), or (7) of section 1521(a)." This relief includes the "examination of witnesses pursuant to Rule 2004 and the delivery of information concerning the debtor's assets, affairs, rights, obligations or liabilities" (§ 1521(a)(4)). It is implausible to require an adversary proceeding for such actions in a chapter 15 case, where no adversary proceeding is required for such activity in a case under any other bankruptcy code chapter.

The legislative history of § 1519(e) also belies Libra's interpretation. The legislative history states: "Subsection (e) makes clear that this section contemplates injunctive relief and that such relief is subject to specific rules and a body of jurisprudence."[25] According to this legislative comment, the rules and jurisprudence for an injunction apply, pursuant to § 1519(e), only where a foreign representative seeks an injunction under § 1519, and not where the relief sought is not an injunction.

Nonetheless, it is clear that § 1519(e) applies at least to certain kinds of relief under § 1519. Section 1519(a)(1) specifically authorizes relief "staying execution against the debtor's assets." If nothing

**22.** *See, e.g., E. & J. Gallo Winery v. Andina Licores S.A.,* 446 F.3d 984, 990 (9th Cir.2006).

**23.** *See, e.g., Keirnan v. Utah Transit Auth.,* 339 F.3d 1217, 1220 (10th Cir.2003) ("A preliminary injunction serves to preserve the status quo pending a final determination of the case on the merits.").

**24.** *See* Fed.R.Civ.P. 65(b).

**25.** H.R. Rep. No. 109–31(1) at 116 (2005), *as reprinted in* 1005 U.S.C.C.A.N. 88, 178.

else, relief under § 1519(a)(1) is the kind of relief that is subject to the procedural requirements of § 1519(e). In their moving papers, the joint administrators in fact have requested such a stay of execution, which would require an adversary proceeding as Libra contends. However, at the hearing the foreign administrators changed their motion to request only the imposition of § 362 on a provisional basis pending a decision on recognition of the foreign proceedings.

■ Thus the analysis of § 1519 itself indicates that the prerequisites for obtaining injunctive relief specified by § 1519(e) do not apply to all relief under § 1519. Instead, these requirements should apply only where the relief sought under § 1519 is injunctive relief, such as the staying of execution pursuant to § 1519(a). In contrast, if the foreign representative is seeking different relief, and not an injunction, subsection (e) does not apply.

### c. Context of § 1519(e)

Section 1519(e) must be interpreted in the context of its nearly identical counterpart in § 1521, which supports the same determination. Section 1521 provides the very broad scope of relief that a court may grant upon the recognition of a foreign proceeding as either a main proceeding or a nonmain proceeding (which has not yet occurred in these cases). Like § 1519(e), § 1521(e) provides: "The standards, procedures, and limitations applicable to an injunction shall apply to relief under paragraphs (1), (2), (3) and (6) of subsection (a)."

Section 1521 is complemented by § 1520 which provides that, upon the recognition of a foreign main proceeding (but not the recognition of a foreign nonmain proceeding), a number of other provisions of the bankruptcy code either apply automatically (§§ 361, 362, 363, 549 and 552) or apply unless the court orders otherwise (operation of the debtor's business pursuant to §§ 363 and 552). Notably, § 1520 lacks any provision remotely similar to §§ 1519(e) and 1521(e).

Section 1521(e) thus may require an adversary proceeding for granting an injunction after recognition of a foreign proceeding (whether as a main proceeding or as a nonmain proceeding) if the foreign administrator seeks any of the following orders; (a) staying the commencement or continuation of an individual action (i.e., outside the chapter 15 case) by a creditor (§ 1521(a)(1)); (b) staying execution against the debtor's assets (§ 1521(a)(2)); (c) suspending the debtor's right to transfer, encumber or otherwise dispose of assets (§ 1521(a)(3)); or (d) extending provisional relief granted under § 1519 (§ 1521(a)(6)). Notably, however, no such adversary proceeding is required if the first two kinds of relief (staying the commencement or continuation of an individual action by a creditor, or staying execution against the debtor's assets) are imposed automatically under § 1520.

The only published opinion interpreting § 1521(e) is *Ho Seok Lee,*[26] which finds that § 1521(e) does not require an adversary proceeding to grant an injunction after an order for recognition. The court in that case had recognized a Korean bankruptcy case as the main proceeding for the debtor. However, the automatic stay provided by § 1520(a) was not sufficient for the debtor, because the debtor wanted a permanent injunction (and not just the temporary stay that § 362 provided) to prohibit a creditor from suing the debtor for the resulting deficiency after the payments provided in the Korean

---

**26.** *In re Ho Seok Lee,* 348 B.R. 799 (Bankr. W.D.Wash.2006).

reorganization plan. The court found that an adversary proceeding was not required, notwithstanding § 1521(e), because the legislative history states, "[t]his section does not expand or reduce the scope of relief currently available in ancillary cases under sections 105 and 304," [27] and prior case law authorized a preliminary injunction under § 304 without requiring an adversary proceeding. [28]

To support the position of the foreign administrators in these cases, this court need not agree with the interpretation of § 1521(e) (and its cognate in § 1519(e)) in the *Ho Seok Lee* opinion. More modestly, the court in these cases only needs to find that the relief sought here, the application of § 362 on a provisional basis, does not require an adversary proceeding. The foregoing analysis of the cognate provision to § 1519(e) in § 1521(e) does not support the position that all relief sought under § 1519 requires an adversary proceeding.

### d. The Automatic Stay— § 362

An analysis of the nature of the automatic stay itself also suggests that no adversary proceeding should be required before it is imposed on creditors on a provisional basis in a chapter 15 case.

### 1. Nature of the Automatic Stay

 The automatic stay (moratorium) is one of the most powerful forms of preliminary relief available in a U.S. court. It stops virtually every creditor action to collect a debt from a bankruptcy debtor.

Such a petition, when filed, "operates as a stay ... [on] the commencement or continuation ... of a judicial action ... against the debtor that was or could have been commenced" before the petition date, as well as against "the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title". [29] Except in a chapter 15 case, the automatic stay applies from the moment that a bankruptcy case is filed.

 The automatic stay has four main purposes in bankruptcy cases: (1) to stop collection efforts against a debtor so that the debtor has time to devise a plan to get out of the financial situation that caused the bankruptcy filing in the first place; (2) to give time to permit the trustee to undertake the collective procedure of collecting the debtor's assets and liquidating them for the benefit of all creditors; (3) to give assurance to all creditors that other creditors are not pursuing independent remedies (either judicial or non-judicial) to drain the debtor's assets; (4) to harmonize the interests of the creditors and the debtor. [30] These goals are clearly important in these chapter 15 cases.

 The automatic stay of § 362 is provisional relief. In a plenary bankruptcy case, in due course it is replaced by a permanent injunction (if the debtor is an individual and receives a discharge), [31] a plan of reorganization, [32] or the closing or dismissal of the case. [33]

---

**27.** *Id.* at 802 (*citing* H.R. REP. No. 109–31(1), at 116, *as reprinted in* 2005 U.S.C.C.A.N. 88, 178).

**28.** *Id.*, citing *In re Rukavina*, 227 B.R. 234 (Bankr.S.D.N.Y.1998).

**29.** § 362(a)(1), (3).

**30.** *Cf. Caffey v. Russell (In re Caffey)*, 384 B.R. 297, 305 (Bankr.S.D.Ala.2008); *Johnston v. Parker (In re Johnston)*, 321 B.R. 262, 273–74

(D.Ariz.2005) (internal citations omitted); *see also*, H.R. REP. No. 95–595, at 340 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6296–97.

**31.** *See* §§ 727(b) (liquidations); 944 (municipal cases); 1141 (reorganizations).

**32.** A plan of reorganization, under chapters 9, 11, 12 and 13, is binding on all creditors, and normally replaces the automatic stay. *See* §§ 944(a) (municipal cases), 1141 (reorgani-

■ Unlike other forms of preliminary relief, the automatic stay is truly automatic: it does not depend on the issuance of any order by the court. The automatic stay takes effect without any notice whatever to creditors, without an opportunity to oppose its imposition, or even an opportunity to be heard thereon.

■ The United States automatic stay applies worldwide,[34] whether or not this is consistent with domestic law in the relevant foreign country. If a creditor violates the stay anywhere in the world, that creditor is subject to sanctions in the United States.[35] Sanctions may include the denial of a creditor's claim in a U.S. bankruptcy case, monetary sanctions and, in an extreme case, injunctive relief.[36] If a foreign creditor has assets that are subject to the jurisdiction of a United States court or has filed a claim in the relevant bankruptcy case,[37] the bankruptcy court will be able to enforce sanctions for violation of the automatic stay, even if the violation occurred outside the United States. However, in a chapter 15 case, the automatic stay of § 1520 applies only to the debtor and the debtor's property that is within the territorial jurisdiction of the United States.[38] A stay imposed under § 1521, after the recognition of a foreign nonmain proceeding, or on a preliminary basis under § 1519, should likewise be so limited.

■ Creditors affected by the automatic stay are protected by its procedure authorizing relief from the automatic stay in certain circumstances. A creditor may qualify for relief from the automatic stay upon a showing of "cause," including a lack of adequate protection of a movant's interest in property,[39] or that the debtor lacks equity in the property and it is not necessary for an effective reorganization.[40] It is chiefly secured creditors who may obtain relief from the automatic stay under these provisions.[41]

■ In the Ninth Circuit, any action taken in violation of the automatic stay is void, whether or not the creditor had notice of the stay at the time of the action at issue.[42] Indeed, the chief benefit to a creditor of its lack of notice of the automatic stay is that the lack of notice is a

zations), 1227 (family farmers and fishermen), 1327 (debts of individuals).

33. See § 362(c).

34. See, e.g., Nakash v. Zur (In re Nakash), 190 B.R. 763, 768 (Bankr.S.D.N.Y.1996).

35. See § 105.

36. See Underwood v. Hilliard (In re Rimsat, Ltd.), 98 F.3d 956, 962 (7th Cir.1996); Lykes Bros. S.S. Co. v. Hanseatic Marine Serv. (In re Lykes Bros. S.S. Co.), 207 B.R. 282, 287 (Bankr.M.D.Fla.1997).

37. See Hong Kong & Shanghai Banking Corp. v. Simon (In re Simon), 153 F.3d 991, 997 (9th Cir.1998) (filing proof of claim in bankruptcy case submits creditor to general jurisdiction of the bankruptcy court); Lykes Bros.

S.S. Co. v. Hanseatic Marine Serv., (In re Lykes Bros. S.S. Co.), 207 B.R. 282 (Bankr.M.D.Fla. 1997).

38. See § 1520(a)(1).

39. See § 362(d)(1).

40. See § 362(d)(2).

41. Relief from the automatic stay is also available under a shortened time frame in a single asset real estate case (§ 362(d)(3)) and under certain circumstances where the bankruptcy petition is part of a scheme to delay, hinder and defraud creditors (§ 362(d)(4)).

42. See, e.g., Schwartz v. United States (In re Schwartz), 954 F.2d 569, 571–72 (9th Cir. 1992).

defense to the imposition of punitive damages against the offending creditor.[43]

 Unlike cases filed under other chapters of the U.S. bankruptcy code,[44] the filing of a chapter 15 petition does not automatically impose a stay on creditor collection efforts. Indeed, in some chapter 15 cases, the automatic stay never comes into effect.

 If a foreign proceeding is recognized as a main proceeding, the stay comes into effect automatically upon the issuance of the order for recognition. However, if a foreign proceeding is recognized as a nonmain proceeding in a chapter 15 case, a stay comes into effect only if it is specially ordered by the court: there is no automatic stay as to the debtor's U.S. assets upon the recognition of a foreign proceeding as a nonmain proceeding.[45]

## 2. Differences Between Automatic Stay and Injunction

As Libra argues, the relief that § 362 gives a debtor and creditors is at least similar to an injunction, albeit without either the limitations or the procedural safe-

guards of an injunction. Nonetheless, the automatic stay is quite a different animal from an injunction.

 An injunction is a court order, "directed to a party, enforceable by contempt, and designed to accord or protect some or all of the substantive relief sought by a complaint in more than temporary fashion."[46] An order that does not encompass all of the branches of this definition does not normally qualify as an injunction.[47]

 The stay under § 362 is fundamentally different in several respects from an injunction. Perhaps the most important difference is that the stay is *in rem:* its purpose is to protect property that is *in custodia legis* in consequence of the bankruptcy filing.[48] Accordingly, it is not directed to a party in litigation, or even to any particular person. Instead, it is directed to the world at large, including all individuals and corporate entities.

The *in rem* status of bankruptcy cases is most clearly articulated by the United States Supreme Court in *Central Virginia*

---

**43.** *See, e.g., In re Augustino Enters., Inc.,* 13 B.R. 210, 212 (Bankr.D.Mass.1981).

**44.** A U.S. bankruptcy case may be filed under chapter 7, chapter 9, chapter 11, chapter 12, chapter 13 or chapter 15. Chapters 1, 3 and 5 have general provisions that are typically applicable to cases under any chapter. The remaining chapter numbers are unused.

**45.** There may be a foreign stay, nonetheless, that applies worldwide and is effective in the United States. *See, e.g., In re Artimm,* 278 B.R. 832 (Bankr.C.D.Cal.2002) (recognizing that the Italian automatic stay applied to the debtor's assets in the United States in consequence of its filing a bankruptcy case in Rome, Italy). Such a stay would apply to the U.S. assets in a chapter 15 case, both before and after the issuance of a recognition order. However, none of the parties before the court has claimed that the Pro–Fit assets in the

United Slates are subject to an automatic stay that is in force in the Leeds cases.

**46.** 16 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure 2d § 3922 (1996) (internal quotations omitted); *accord, U.S. v. E–Gold, Ltd.,* 521 F.3d 411, 415 (D.C.Cir.2008).

**47.** See 16 Wright, Miller & Cooper, Note 46, § 3922.

**48.** In a plenary bankruptcy case, the property at issue is property of the estate pursuant to § 541(a). In a chapter 15 case, normally there is no estate created. However, the U.S. property of the debtor is protected by the automatic stay once recognition is granted. *See* § 1520(a)(1). It is this property that may be entitled to interim protection by applying § 362 on an interim basis until an order for recognition is granted.

*Community College v. Katz,*[49] where the Supreme Court stated:

> Bankruptcy jurisdiction, at its core, is *in rem* . . . . Critical features of every bankruptcy proceeding are the exercise of exclusive jurisdiction over all of the debtor's property, the equitable distribution of that property among the debtor's creditors, and the ultimate discharge that gives the debtor a "fresh start" by releasing him, her, or it from further liability for old debts.[50]

The court further stated: "Bankruptcy jurisdiction, as understood today and at the time of the framing, is principally *in rem* jurisdiction (citing cases)". In bankruptcy, the court's jurisdiction is premised on the debtor and his estate, and not on the creditors.[51]

The issuance of a stay to protect the property of the debtor is in particular an exercise of the bankruptcy court's *in rem* jurisdiction. Its purpose is to protect the property for the benefit of the creditors, and to shield it from particular creditors who seek to obtain preferential payment of their debts to the disadvantage of other creditors. This is precisely the purpose for which the foreign administrators seek an interim stay order in these cases.

Furthermore, the fact that § 362 takes effect automatically in all bankruptcy cases, except those filed under chapter 15, without the limitations or procedural safeguards of an injunction, supports the inference that these limitations and procedural safeguards are not needed when a court imposes § 362 in a chapter 15 case on an interim basis.

Indeed, in chapter 15 itself, § 362 takes effect automatically upon the recognition of a foreign main proceeding. Section 1521 makes it clear that an adversary proceeding is not required to achieve this result.

In sum, an adversary proceeding is never needed under the bankruptcy code for the imposition of the automatic stay, and satisfaction of the requirements for an injunction is never required.

### D. Adoption of Other Provisions of the Bankruptcy Code

Further analysis is useful with respect to the technique of adopting a non-chapter 15 provision by reference in a chapter 15 case. This technique can be useful with respect to a number of provisions in other chapters of the bankruptcy code.

Chapter 15 generally does not specify what other bankruptcy code provisions should be applied in a chapter 15 case. Section 103(a) specifies that, for all chapter 15 cases, §§ 307, 362(n), 555–557, and 559–562 apply. In addition, § 1520 provides that, if a foreign proceeding is recognized as a foreign main proceeding, several other sections (notably including §§ 361 and 362) apply to the chapter 15 case from that point forward. A much smaller set of sections applies automatically under § 1521 upon the recognition of a foreign nonmain proceeding.

It is highly unlikely that a court can simply ignore all the rest of the bankruptcy code and the other provisions relating to bankruptcy cases in the United States, just because they are not specifically mentioned in chapter 15 or § 103. The better reading is that many other provisions of the bankruptcy code can be applicable in a chapter 15 case: Some should apply in

---

49. *See Cent. Va. Comm. College v. Katz,* 546 U.S. 356, 126 S.Ct. 990, 163 L.Ed.2d 945 (2006).

50. *Id.* at 362–64, 126 S.Ct. 990.

51. *Id.* at 357, 126 S.Ct. 990 (inner quotations omitted).

most cases, while others should be applied only on a case by case basis.

Thus, the specific provisions of chapter 15 only designate the sections of the bankruptcy code apart from chapter 15 that apply automatically to a chapter 15 case upon the recognition of a foreign proceeding as a main proceeding or as a nonmain proceeding. The question of which other bankruptcy code provisions may be made applicable by court order in a particular chapter 15 case is left open.

■■■ Furthermore, and more important for these chapter 15 cases, the list in § 1519 of the sections from the other parts of the bankruptcy code that can be adopted as provisional relief under § 1519 is incomplete. Thus, a number of other provisions of the bankruptcy code may be applied provisionally under § 1519 while an application for recognition is pending.

The adoption of a section or sections of another part of the bankruptcy code, in appropriate circumstances, is often a far better procedure than adopting a court order that specifies in detail the rights and obligations of the debtor and the creditors. By incorporating a section of the bankruptcy code (such as § 362) by reference, the court thereby imports both the statutory language (which is ten pages long for § 362), and the case law arising from that statutory provision. For § 362, for example, adopting it by reference imports all of the details of the circumstances where § 362 applies and does not apply. In addition, it imports the provisions for automatic termination of the automatic stay, and the provisions for obtaining relief from the stay. A simple phrase making § 362 applicable in a chapter 15 case imports all of this law into the case.

This conclusion is further supported by § 105(a), which provides: "The court may issue any order process, or judgment that is necessary or appropriate to carry out the provisions of this title." Section 103 specifically makes chapter 1 (including § 105) applicable to cases under chapter 15.

### E. Change in Request for Provisional Relief

Notwithstanding Libra's acquiescence at the hearing on this application, the court notes that the papers before the court are cast as if they are requesting something in the nature of a temporary restraining order and preliminary injunction, rather than the application of §§ 361 and 362. The court finds this to be a change in the position of the applications, and by no means a trivial change, given the court's analysis. Nonetheless, the court holds that the provisional application of §§ 362 and 361—by way of § 1519—may be ordered on a provisional basis pending the hearing on recognition.

To protect Libra's due process rights and its right to be informed of the relief that the foreign representatives seek, the court set a further hearing two days after the first hearing, where the relief granted herein could be reconsidered at Libra's request. The next day, Libra informed the court that it declined to proceed with that hearing.

### F. § 363 Relief Under § 1519

Talon's main interest in this chapter 15 case is that any assets of the UK companies be sold pursuant to § 363. It is Talon's fear that the administration proceeding in the United Kingdom would lack the supervision of a sale process like that in a U.S. bankruptcy case. For this reason, Talon and its related entities have welcomed this chapter 15 case, because pursuant to § 1520, once a foreign proceeding is recognized as a foreign main proceeding, § 363 applies "to any transfer of an interest of the debtor in property that is within

the territorial jurisdiction of the United States." § 1520(a)(2).

Talon's initial concern at the hearing was that the foreign administrators, in their application, had requested the entry of a temporary restraining order "entrusting the administration or realization of the foreign debtor's property to the foreign representatives." Such relief would be available to the foreign representatives on an interim basis pursuant to § 1519(a)(2).

Talon reads § 1519(a)(2) as allowing the court to authorize the joint administrators to dispose of assets in a manner other than as provided under § 363. Since it now appears, however, that petitioners are not requesting the relief provided under § 1519(a)(2), the court need not reach the question of whether § 1519(a)(2) could allow a petitioner to override the requirements of § 363 during the gap period before recognition.

Talon nevertheless welcomes the application of § 362 in this case, as this will maintain the status quo so that the § 363 process may eventually occur. In addition, Talon requests that the provisions of § 363 be made immediately applicable in this case to all the assets of the debtors. It appears to the court, however, that while it may make the provisions of § 363 applicable in this case pursuant to §§ 1519(a), 105(a), and 105(d), the court does not have the authority under chapter 15 alone to make these provisions applicable to assets outside of the United States.

## IV. Conclusions

For the foregoing reasons, the court finds that the imposition of the § 362 automatic stay as provisional relief under § 1519 is not injunctive relief that is subject to the § 1519(e) requirement imposing the standards for an injunction. For this reason, the requirements of § 1519(e) do not apply to such an order.

The court concludes that sufficient authority exists under §§ 1519(a), 105(a), and 105(d) for the adoption of § 362 provisionally in these cases, to apply to all of the debtors' property in the United States pending a ruling on recognition of the foreign proceedings relating to the debtors herein.

Further, the provisions of § 363, by consent of the petitioners, also apply provisionally with respect to United States assets. In addition to these statutory provisions, each of which applies in its entirety, all of the case law thereunder is hereby made applicable to these cases. The court denies such relief with respect to assets outside the territorial jurisdiction of the United States, on the grounds that chapter 15 alone does not provide the court with the authority to grant such relief at this time.