In re: Jonathan LOY, Debtor.

Jeremiah Anthony O'Sullivan,
as Trustee for the Bankrupt
Jonathan Loy, Appellant,

v.

Jonathan Loy, Appellee.

Civil Action No. 4:09cv154.

United States District Court,
E.D. Virginia,
Newport News Division.

June 23, 2010.

Daniel F. Blanks, Esq., Douglas M. Foley, Esq., Norfolk, VA, for Appellant.

Jonathan Loy, Esq., Hampton, VA, for Appellee.

## OPINION AND ORDER

MARK S. DAVIS, District Judge.

This matter is before the Court on the appeal of Trustee Jeremiah O'Sullivan ("English Trustee") from an Order and accompanying Memorandum Opinion issued by the United States Bankruptcy Court for the Eastern District of Virginia ("bankruptcy court"). After a post-trial hearing, the bankruptcy court found that it could not "avoid" (i.e. render void) a transfer by Debtor Jonathan Loy of his United States property under 11 U.S.C. §§ 1520(a)(2) and 549(a)(1) because the transfer occurred prior to the commencement of the Chapter 15 bankruptcy case. *In re Loy,* No. 08–05011, 2009 WL 2381339 (Bankr.E.D.Va. Aug.3, 2009).

The dispositive question on appeal is: when does the "commencement of the case" occur for the purposes of applying 11 U.S.C. §§ 549(a)(1) and 1520(a)(2) of the United States Bankruptcy Code? For the reasons discussed below, the bankruptcy court's decision as to Adverse Proceeding Number 08–05011–FJS is **AFFIRMED.** Although the appellant also filed a Notice of Appeal of the bankruptcy court's holding in APN 08–05002–FJS, the appellant has not briefed that issue and therefore the Court deems it withdrawn. Fed. R. Bankr.P. 8001(a).

### I. Factual and Procedural Background

#### A. United Kingdom Insolvency Proceeding

Jonathan Loy ("Mr. Loy"), a citizen of the United Kingdom, moved to the United States with his wife and children and purchased a 3.78 acre undeveloped property in Hampton, Virginia (the "Creekview Property") on August 9, 2002. After the failure of an English furniture company that he

partially owned and operated, Mr. Loy was adjudged a bankrupt by the Exeter County Court of Devon, England ("English court") on August 17, 2006. On February 1, 2007, the English Trustee appointed by the English court filed a *Lis Pendens* on the Creekview Property in the Circuit Court of the City of Hampton.

Mr. Loy, who initially held the property in his name alone, thereafter executed and recorded a Deed of Gift for the Creekview Property to his wife, Susan Loy ("Mrs. Loy"), and himself as tenants by the entirety with the right of survivorship as at common law on October 24, 2007. At the time this Deed of Gift was recorded, Mrs. Loy was not herself bankrupt, but she was aware of the English bankruptcy proceedings involving her husband, as well as the *Lis Pendens* that had been filed on the Creekview Property.

### B. United States Bankruptcy Proceedings

On October 28, 2007, the English Trustee filed a Petition for Recognition of the English Bankruptcy Proceeding in the United States Bankruptcy Court of the Eastern District of Virginia. Mr. and Mrs. Loy then executed and recorded a Deed of Trust on October 29, 2007 which granted Joseph Pinard ("Mr. Pinard") a collateral interest in the Creekview Property as part of a loan transaction. At the time the Deed of Trust was recorded, Mr. Pinard was aware that Mr. Loy had previously been adjudged bankrupt by an English court and was also aware of the *Lis Pendens* that had been filed on the Creekview Property.

In response to the English Trustee's Petition for Recognition, on December 18, 2007, the bankruptcy court *recognized* the English bankruptcy proceeding as a Foreign Main Proceeding [1] as authorized by 11 U.S.C. § 1517. *In re Loy*, 380 B.R. 154 (Bankr.E.D.Va.2007). In its Order, the bankruptcy court stated that such recognition was effective as of October 28, 2007, the date that the English Trustee filed the petition for recognition. (Appellant Br., Ex. A at 1, Docket No. 7.)

On January 11, 2008, the English Trustee filed a Motion to Sell the Creekview Property Free and Clear of All Liens, Claims, and Encumbrances pursuant to 11 U.S.C. §§ 1521(a)(2) and 363(b) and (f). The bankruptcy court, in a Memorandum Opinion and Order dated April 3, 2008, denied the Motion. *In re Loy*, No. 07–51040, 2008 WL 906503 (Bankr.E.D.Va. April 3, 2008). It held that in order to pursue liquidation of the Creekview Property, the English Trustee must first obtain avoidance [2] of the Deed of Gift and the Deed of Trust through an adversary proceeding under the Federal Rules of Bankruptcy Procedure. *In re Loy*, 2008 WL 906503, at *6. On June 5, 2008, the English Trustee filed a Complaint in the bankruptcy court seeking avoidance of both the October 24, 2007 Deed of Gift and the October 29, 2007 Deed of Trust pursuant to 11 U.S.C. §§ 1520(a)(2) and 549(a). The proposed avoidance was opposed by Mr. Loy, Mrs. Loy, and Mr. Pinard. The bankruptcy court held a trial on the matter on January 7 and 8, 2009, and held a post-trial hearing on March 5, 2009. Mr. and Mrs. Loy appeared *pro se* at the trial and hearing, and Mr. Pinard and the English Trustee were represented by counsel.

### C. Bankruptcy Court Memorandum Opinion

The bankruptcy court issued an Order and Memorandum Opinion on August 3,

---

**1.** A Foreign Main Proceeding is "a foreign proceeding pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1502(4).

**2.** "Avoidance" is the rescinding or voiding of a transfer of interest made by the debtor.

2009 in which it denied avoidance of the Deed of Gift and the Deed of Trust. *In re Loy,* Case No. 08–05011, 2009 WL 2381339 (Bankr.E.D.Va. Aug.3, 2009). In its Opinion, the bankruptcy court noted that 11 U.S.C. § 549(a) provides for avoidance of property transfers that occur after the "commencement of the case." *Id.* at *3. The bankruptcy court concluded that the "commencement of the case" occurred on October 28, 2007, when the Chapter 15[3] case effectively commenced. *Id.* at *4. It also noted that because the Deed of Gift to Mrs. Loy on the Creekview Property was executed, delivered, and recorded prior to October 28, 2007, thus creating a tenancy by the entirety protecting the Creekview Property from Mr. Loy's individual creditors, such Deed of Gift could not be avoided under 11 U.S.C. § 549(a). *Id.* at *4–*5. Therefore, because Mr. and Mrs. Loy owned the Creekview Property as tenants by the entirety when they executed the Deed of Trust to Mr. Pinard, the bankruptcy court concluded that it could not avoid the Deed of Trust. *Id.* at *5. The bankruptcy court also noted that if the Creekview Property had not been owned by Mr. and Mrs. Loy as tenants by the entirety, but by Mr. Loy individually, the Deed of Trust could have been avoided under Sections 1520(a)(2) and 549(a)(1) because such Deed of Trust was executed after the commencement of the Chapter 15 case. *Id.* at *4.

In so ruling, the bankruptcy court rejected the English Trustee's contention that the "commencement of the case" was August 17, 2006, the date that Mr. Loy was declared bankrupt in England. *Id.* at *8. The bankruptcy court held that the English Trustee's theory was unsupported by case law or by the statutory text. *Id.*

at *8–*9. It further concluded that if the English Trustee's theory were accepted, it would expose transactions in the United States to commercial uncertainty, disrupting the orderliness of the bankruptcy proceeding and potentially harming domestic good faith purchasers. *Id.* at *9. Finally, the bankruptcy court noted that such a rule could cause significant delays "in the bankruptcy process, resulting in a lack of finality and predictability." *Id.*

On October 1, 2009, the bankruptcy court certified its August 3, 2009 Memorandum Opinion and Order for direct appeal to the United States Court of Appeals for the Fourth Circuit. *See* 28 U.S.C. § 158(d)(2)(A). However, the Fourth Circuit Court of Appeals denied the English Trustee's petition for permission to appeal. *In re Loy,* Case No. 08–05011, Docket No. 149 (4th Cir. Dec. 10, 2009). The English Trustee then appealed the bankruptcy court's Order to this Court. Mr. Loy, a *pro se* party, has not filed a brief on appeal. However, the Court has reviewed the pleadings submitted to the bankruptcy court and the transcripts of the proceedings below.

## II. Standard of Review

■ This Court has jurisdiction to hear appeals from the final judgments and orders of a federal bankruptcy judge under 28 U.S.C. § 158(a). Questions of law, such as those at issue here, are reviewed *de novo. In re Price,* 562 F.3d 618, 622 (4th Cir.2009).

## III. Discussion

### A. Chapter 15

Chapter 15 of the United States Bankruptcy Code was enacted by Congress on October 17, 2005 as a means to facilitate

---

**3.** Chapter 15 is the part of the United States bankruptcy code addressing cross-border in-

solvencies.

international cooperation in the administration of cross-border insolvencies. 11 U.S.C. § 1501(a). This new Chapter of the Bankruptcy Code is based on the United Nations Model Law on Cross–Border Insolvency ("Model Law"), 11 U.S.C. § 1501(a), and it has replaced 11 U.S.C. § 304, which previously governed cross-border insolvencies.

Under Chapter 15, a qualified foreign representative is authorized to file a petition in a United States bankruptcy court to have a foreign insolvency recognized in the United States as a "foreign main proceeding" or as a "foreign nonmain proceeding." 11 U.S.C. §§ 1515, 1517. Upon recognition, the United States bankruptcy court presides over the Chapter 15 case as one ancillary to the foreign proceeding. 11 U.S.C. § 1504.

Once the foreign proceeding is recognized, the foreign representative may pursue relief in United States courts. Section 1520 ("Effects of recognition of a foreign main proceeding"), under which the English Trustee brings his claim, sets forth the automatic relief that is immediately available upon recognition. 11 U.S.C. § 1520. This automatic relief includes an automatic stay pursuant to 11 U.S.C. § 362 and avoidance of post-petition transfers pursuant to 11 U.S.C. § 549 ("Postpetition Transactions"). 11 U.S.C. § 1520(a)(1) & (2). Section 1521 ("Relief that may be granted upon recognition") also gives the court *discretionary* authority to "grant any appropriate relief," but specifically excludes authorization to avoid certain transactions, such as preferential and fraudulent transactions. 11 U.S.C. § 1521(a)(7). Instead, Section 1523 ("Ac-

tions to avoid acts detrimental to creditors") grants the foreign representative standing to bring such avoidance actions in a bankruptcy proceeding under another chapter of the Bankruptcy Code.

In this action, the English Trustee seeks to avoid the October 24, 2007 Deed of Gift and the October 29, 2007 Deed of Trust as post-petition transactions only, pursuant to 11 U.S.C. § 1520(a)(2) and Section 549(a)(1). The action does not, pursuant to Section 1523, seek avoidance under other chapters of the Bankruptcy Code.

Section 1520(a)(2) provides that:

[u]pon recognition of a foreign proceeding that is a foreign main proceeding— [section 549] appli[es] to a transfer of an interest of the debtor in property that is within the territorial jurisdiction of the United States to the same extent that the section[ ] would apply to property of an estate.

Section 549, in turn, states that "the trustee may avoid a transfer of property of the estate that occurs *after the commencement of the case*." 11 U.S.C. § 549(a)(1)(emphasis added).[4] However, the statute does not specify whether, in the Chapter 15 context, the "commencement of the case" refers to the Chapter 15 case or to the foreign insolvency proceeding.

### B. The English Trustee's Argument

The English Trustee argues that Section 549's "commencement of the case" language refers to the foreign insolvency proceeding. He asserts that a Chapter 15 case is not actually a "case," but is merely an ancillary proceeding to the pre-existing

---

**4.** Although Section 1520(a)(2) authorizes the avoidance of post-petition transfers under Section 549, Section 1521(a)(7) specifically forbids relief under Section 550, which allows the trustee to recover property avoided under Section 549. Because the Court determines

that the transaction in question may not be avoided under Section 549, it does not address the implications of Section 1521(a)(7) on this case. *See In re Loy*, 2008 WL 906503, at *6, n. 7; Clark, § 7[2], at 71 n. 31.

foreign bankruptcy case. Therefore, the argument continues, where Section 549 grants avoidance of transactions occurring after the "commencement of the case," it cannot refer to the Chapter 15 case, but must rather reference the foreign proceeding. The import of this argument becomes immediately obvious under the facts of this case. If Section 549's "commencement of the case" refers to the English insolvency proceedings, then the English Trustee can seek to avoid transactions occurring at least as early as August 17, 2006, when Mr. Loy was adjudged bankrupt by the English court. If it refers to the Chapter 15 proceeding, then the English Trustee's efforts to avoid transfers under this code section would be limited to transactions taking place after October 28, 2007.

As support for his theory, the English Trustee observes that the Chapter 15 case is an "ancillary case." *See* 11 U.S.C. § 1504 ("Commencement of Ancillary Case"). He further argues that the fact that Chapter 15 does not create a bankruptcy "estate" indicates that the Chapter 15 case is not a true "case" from which "commencement" should be measured, but is merely ancillary to the foreign proceeding in which the bankruptcy estate is created. Thus, he says, the true case, for purposes of determining commencement, is the English insolvency proceeding. The English Trustee further claims that the United Kingdom's Cross–Border Insolvency Regulations, 2006, S.I. 1030 ("UK Regulation"), also derived from the Model Law, support the view that an ancillary case is not a true "case."

## C. Interpretation of "Commencement of the Case"

 Because the text of Sections 1520(a)(2) and 549 does not resolve the question of the meaning of the phrase "commencement of the case," the Court looks to other sources to discern the meaning of the statutes. Specifically, the Court reviews other provisions in Chapter 15, case law and commentary concerning the nature of the "ancillary case," and (as required by statute) international models of transnational insolvency law.

### 1. chapter 15 statutory text

While "commencement of the case," as used in Section 549, is not defined in the "Definitions" of Chapter 15 (11 U.S.C. § 1502), Section 1504 does describe the method for "commencement of [an] ancillary case." It provides that "[a] case under this chapter is commenced by the filing of a petition for recognition of a foreign proceeding under section 1515." 11 U.S.C. § 1504.[5]

This statutory language, referring as it does to an "ancillary case," rather than an ancillary "proceeding" or other nebulous term, tends towards the view that a Chapter 15 case is indeed a "case," albeit limited, and that a transfer is avoidable under Section 549 if it occurs after the filing of a petition for recognition. This conclusion is also reached by a noted expert in international insolvency law, who explains:

> Section 549 renders avoidable any unauthorized transfers of property that occur after the *commencement of the case.* That means that transfers that occurred *after* the petition is filed under Section

---

**5.** While the Court recognizes the challenges of extrapolating a statute's meaning from language in a committee report, the Court notes that the Report of the House of Representatives Committee responsible for drafting the House bill explains that "this section … pro-

vides that a petition for recognition commences a 'case,'" H.R.Rep. No. 109–31 (Pt. 1), at 108 (2005), U.S.Code Cong. & Admin.News 2005, pp. 88, 171. This observation of the Committee is reflected in the statutory language of Chapter 15.

1504, but *before* recognition is granted under section 1517 can nonetheless be avoided, subject to due process considerations.

Hon. Leif M. Clark, *Ancillary and Other Cross–Border Insolvency Cases Under Chapter 15 of the Bankruptcy Code: A Collier Monograph* § 5, at 35 n. 2 (2008).

In contrast, nowhere in Chapter 15 is the foreign insolvency proceeding referred to as a "case." Throughout Chapter 15, the foreign insolvency proceeding is consistently referred to as a "foreign proceeding," while the Chapter 15 case is referred to as a "case." *See, e.g.,* 11 U.S.C. §§ 1504, 1509(a).[6]

The Court, having found that at first blush Chapter 15's text tends toward the view that post-petition transfers may be avoided if they occurred after the filing of the Chapter 15 petition, proceeds to consider the English Trustee's statutory development and theoretical context arguments involving the ancillary case in order to discern the meaning of the statute's language.

### 2. "ancillary case"

The English Trustee rests his "commencement of the case" argument, at least in part, on the statute's use of the phrase "ancillary case," rather than "case." The Court begins its analysis of this argument by considering whether the fact that a Chapter 15 case is "ancillary" necessarily means that it is not a "case." At the outset, the Court observes that while the statute refers to a Chapter 15 proceeding as an "ancillary case," such reference does not *compel* the conclusion that it is, or is not, a "case" for purposes of the Section 549 commencement analysis. The adjective "ancillary" simply means supplementary or subordinate, *Black's Law Dictionary* 101 (9th ed.2009), and does not negate the existence of the noun that it modifies. Therefore, it is necessary to delve deeper to address the English Trustee's argument on this point.

#### a. section 304

There is some historical and theoretical support for the English Trustee's insistence that an ancillary case is not a "case." Prior to the enactment of Chapter 15, the administration of cross-border insolvencies in United States courts was governed by 11 U.S.C. § 304. "Section 304 cases under prior law were classic ancillary proceedings. They were not bankruptcy cases, but only a set of procedures by which a foreign representative ... could obtain relief in the United States." Jay Lawrence Westbrook, *Chapter 15 at Last,* 79 Am. Bankr.L.J. 713, 717 (2005); *see also In re Iida,* 377 B.R. 243, 255 (9th Cir. BAP 2007)

---

**6.** Neither is there substantial guidance in Chapter 15 as to when to date the commencement of the foreign proceeding. Section 1515(b) provides that a foreign representative seeking recognition of a foreign proceeding may substantiate its existence by producing "a certified copy of the decision commencing such foreign proceeding and appointing the foreign representative." 11 U.S.C. § 1515(b)(1). The English Trustee, who included a certified copy of such a decision in his application for recognition, presumably bases his assumption, that the foreign case commences on the date when the debtor is declared insolvent in the foreign jurisdiction, on Section 1515's language. However, Section 1515(b) simply sets forth acceptable means to verify the existence of the foreign proceeding and does not purport to define the "commencement of the case." Although, if Section 549 did reference a foreign proceeding, Section 1515 would be potentially useful in resolving ambiguity surrounding the commencement of the foreign case, the fact that there is such ambiguity is instructive. If Congress intended Section 549's "commencement of the case" to refer to the foreign proceeding, this lack of substantial guidance would be a significant omission, and such omission, though not conclusive, is a helpful piece of the puzzle in this case.

("Filing a petition under § 304 did not initiate a normal bankruptcy case."). The provisions of Section 304 reflected the view that such actions only provided a set of procedures to flexibly accommodate foreign insolvency proceedings.[7] For example, a Section 304 case did not create a "bankruptcy estate;" the "bankruptcy estate" was defined in the foreign proceeding. *In re Metzeler*, 78 B.R. 674, 677 (Bankr.S.D.N.Y.1987). Furthermore, unlike the new Chapter 15 proceeding, initiation of a Section 304 case did not result in an automatic stay of other proceedings. *In re Axona*, 88 B.R. 597, 606 (Bankr. S.D.N.Y.1988). A Section 304 ancillary proceeding existed to facilitate the foreign proceeding, not to "determine the nature of the estate involved." Paul L. Lee, *Ancillary Proceedings Under Section 304 and Proposed Chapter 15 of the Bankruptcy Code*, 76 Am. Bankr.L.J. 115, 150 (2002).

### b. chapter 15

With the enactment of Chapter 15, Congress has preserved many of the features of the Section 304 ancillary case.[8] As in a Section 304 case, the bankruptcy court's powers are limited to "the territorial jurisdiction of the United States," and a "bankruptcy estate" is not created. 8 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* § 1520.01, at 1520–3 (15th ed. rev.2009). Furthermore, there remains a strong emphasis on comity and cooperation with foreign bankruptcy courts. 11 U.S.C. §§ 1501(a)(1)(B), 1507(b).

However, Chapter 15 has two features distinct from the former Section 304 that are of particular interest here. First, in contrast to Section 304, Chapter 15 creates a formal structure for administering ancillary proceedings. It grants automatic relief, 11 U.S.C. § 1520(a), authorizes specific forms of discretionary relief, 11 U.S.C. § 1521(a), and specifies the limitations on the court, *see, e.g.,* 11 U.S.C. §§ 1519(f), 1521(a)(7). Additionally, a foreign representative must now obtain recognition prior to pursuing remedies in the United States. This recognition procedure brings a certain order to the case administration, making the proceeding functionally more similar to that of other bankruptcy cases. *See, e.g.,* Bufford, *supra,* at 415 (noting that "the filing of a chapter 15 petition for the recognition of a foreign main proceeding is functionally similar to the filing of a voluntary petition filed by the debtor to commence a domestic bankruptcy case"); 9 *Collier on Bankruptcy* § 1002.04, at 1002–11 ("The filing of a petition commences the Bankruptcy Code case of the debtor or debtors named in the petition. The case, as distinguished from a proceeding, is the legal matter wherein the bankruptcy court is requested to grant the relief provided in Chapter 7, 9, 11, 12, 13, or 15.").

---

**7.** Section 304 granted the following powers:

the court may (1)enjoin the commencement or continuation of (A) any action against (i) a debtor with respect to property involved in such foreign proceeding; or (ii) such property; or (B) the enforcement of any judgment against the debtor with respect to such property, or any act or the commencement or continuation of any judicial proceeding to create or enforce a lien against the property of such estate; (2) order turnover of the property of such estate, or the proceeds of such property, to such foreign representative; or (3) order other appropriate relief.

11 U.S.C. § 304(b) (2004).

**8.** The Court notes that the Report of the House of Representatives Committee responsible for drafting Chapter 15 indicates that a Chapter 15 case was intended by the committee to be a "limited case, designed to function in aid of a foreign proceeding pending in a foreign court." H.R.Rep. No. 109–31 (Pt. 1), at 117 (2005). This intention of the committee is reflected in the statutory language of Chapter 15, as discussed above.

Second, Chapter 15 is clearly designed to be integrated into the rest of the Bankruptcy Code. The Chapter repeatedly references other sections in the Bankruptcy Code, *see, e.g.,* 11 U.S.C. §§ 1501(c), 1505, 1509(e), thus creating an overlap in the laws governing Chapter 15 cases and other bankruptcy cases. Although Section 304 was formerly "more in the Bankruptcy Code than of it," Lee, *supra,* at 115, this is not true of Chapter 15. *See id.* at 186–87 (noting that the "clear intersection between an ancillary proceeding and several other key provisions of the Code ... marks a departure from the past practice of § 304 proceedings that generally have operated outside the bounds of the other provisions in the Code").

These features of Chapter 15 weaken the English Trustee's argument that Section 549's "commencement of the case" language does not refer to the Chapter 15 case. Although a Chapter 15 ancillary case is more limited in scope than other bankruptcy cases, it has some of the structure of other bankruptcy cases, including similar commencement procedures. Furthermore, because the structure of Chapter 15 reflects the intention that such Chapter is meant to be read in conjunction with other Bankruptcy Code provisions, the Court presumes that the "case" referenced in Section 549 may be a Chapter 15 case, Congress having not stated otherwise.

In summary, the fact that a Chapter 15 case is a limited "ancillary" case does not preclude it from being a "case" within the meaning referenced by Section 549's "commencement of the case" language. It is true that courts have not historically viewed ancillary cases to be traditional bankruptcy cases administered under the bankruptcy code, and, under Chapter 15, ancillary cases are still functionally limited. However, Chapter 15's formal structure for administering ancillary cases, as well as its integration into the bankruptcy code, support a finding that Section 549's "commencement of the case" language refers to a Chapter 15 case.[9]

---

**9.** The English Trustee has also presented another argument that merits some discussion, and is based on the fact that a Chapter 15 case does not create an "estate." (Appellant Br. 6–7.) Section 1520 states that Section 549 applies "to a transfer of an interest of the debtor in property that is within the territorial jurisdiction of the United States to the same extent that the section[ ] would apply to property of an estate." 11 U.S.C. § 1520(a)(2). Curiously, the English Trustee argues that this language creates an assumption that an "estate" actually exists. The English Trustee further argues that since a Chapter 15 case does not create an estate, "an estate" must refer to the estate created by the foreign proceeding. The logical conclusion of this argument, according to the English Trustee, is that in order to apply Section 549 "to the same extent" that it would apply to the property of an estate, the Court must date Section 549's "commencement of the case" from the commencement of the specific foreign proceeding that created the applicable bankruptcy estate.

This is a misreading of the text. "An estate" is not a reference to a specific foreign proceeding. The indefinite article signals that the phrase refers to a hypothetical estate. If Congress had meant to reference a specific, existing estate, it would likely have used the definite article.

Furthermore, contrary to the English Trustee's statement, one cannot assume that a foreign "estate" exists in every Chapter 15 proceeding. As the House of Representatives Committee Report notes, a "foreign proceeding may or may not create an 'estate,'" H.R.Rep. No. 109–31, at 114, U.S.Code Cong. & Admin.News 2005, p. 176, and "many foreign systems do not create an estate in insolvency proceedings of the sort recognized under this chapter." *Id.* at 109, U.S.Code Cong. & Admin.News 2005, p. 172.

The Section 1520 text highlighted by the English Trustee simply clarifies that all of the Section 549 provisions that apply in a full domestic bankruptcy case also apply to the property at issue in a limited Chapter 15 case.

### 3. international law

■ Chapter 15 also *requires* that the Court, "[i]n interpreting this chapter, consider its international origin and the need to promote an application of this chapter that is consistent with the application of similar statutes adopted by foreign jurisdictions." 11 U.S.C. § 1508; *cf. Olympic Airways v. Husain*, 540 U.S. 644, 658, 124 S.Ct. 1221, 157 L.Ed.2d 1146 (2004)(Scalia, J., dissenting, joined by O'Connor, J.) (observing that when interpreting a treaty, courts accord judgments of sister signatories considerable weight).[10] Of course, while Section 1508 provides the Court guidance in matters of statutory interpretation only, it does not grant the Court authority to adopt a provision in a foreign statute that is contrary to the text of Chapter 15.

■ As each section of Chapter 15 is based on a corresponding article in the Model Law,[11] if a textual provision of Chapter 15 is unclear or ambiguous, the Court may then consider the Model Law and foreign interpretations of it as part of its "interpretive task." *In re Condor Ins. Ltd.*, 601 F.3d at 321 (5th Cir.2010); 11 U.S.C. § 1508. In doing so, the Court may consider how foreign jurisdictions have interpreted language in the Model Law that is *similar* to that of Chapter 15. *See, e.g., In re Tri–Continental Exchange Ltd.*, 349 B.R. 627, 633 (Bankr.E.D.Ca. 2006) (considering other Model Law-based statutes in interpreting "center of main interests," a phrase in Chapter 15 adopted from the Model Law).

The English Trustee urges the Court to consider the United Kingdom Regulation, which is derived from the Model Law, in interpreting the statutory provisions at issue in this case.[12] As Congress has dictated that Chapter 15 is to be interpreted with its international origin in mind, the Court turns to the Model Law and the United Kingdom Regulation for possible clarification of Section 1520.

---

**10.** Consistent with the statutory mandate which controls the Court's decision, the Court notes that the House of Representatives' Committee Report states that "[i]nterpretation of this chapter on a uniform basis will be aided by reference to [international sources], which will explain the reasons for the terms used and often cite their origins as well." H.R.Rep. No. 109–31(Pt. 1) at 109. "Not only are these sources persuasive, but they advance the crucial goal of uniformity of interpretation." *Id.* at 109–110.

**11.** For example, Section 1501 is based on the Model Law's Article 1, Section 1502 is derived from the Model Law's Article 2, and so on. Westbrook, *supra*, at 18–19.

**12.** In a footnote to his brief, the English Trustee also mentions the European Union's Insolvency Regulation, No. 1346/2000 ("EC Regulation"). (Appellant Br. 12 n. 12.) The EC Regulation, which governs cross-border insolvencies within the European Union, influenced the Model Law's drafters (rather than being derived from the Model Law like the

United Kingdom Regulation), and some of the EC Regulation's provisions arguably may be instructive in interpreting Chapter 15. Clark, *supra*, § 2[3][b] at 13; Alesia Ranney–Marinelli, *Overview of Chapter 15 Ancillary and Other Cross–Border Cases*, 82 Am. Bankr.L.J. 269, 273 (2008).

However, the EC Regulation does differ from the Model Law and from Chapter 15. In particular, "under chapter 15, a separate and distinct bankruptcy case that is ancillary to the foreign proceeding and whose principal purpose is to coordinate U.S. judicial activities with the foreign proceeding, is filed in the United States. In contrast, the [EC Regulation] does not provide for a separate case." Bufford, *supra*, at 581. That distinction is crucial to the question the Court must resolve, which turns on the nature of the ancillary case created under Chapter 15. Therefore, the EC Regulation is of little or no use in interpreting the Chapter 15 provisions implicated here.

### a. the model law

In reviewing the Model Law, the Court is confronted with a significant obstacle to using it as an interpretive guide to Section 1520. The Model Law's Article 20 ("Effects of a foreign main proceeding") provides that "[u]pon recognition of a foreign proceeding that is a foreign main proceeding, the right to transfer, encumber or otherwise dispose of any assets of the debtor is suspended." Model Law, Art. 20(1)(c). Although Section 1520 corresponds to the Model Law's Article 20, its language is very different from Article 20. Article 20 bars such transactions, while Section 1520, using different wording, makes them avoidable. *See* 11 U.S.C. § 1520(a)(2); Bufford, *supra*, at 131 (noting that "Section 1520's language bears little similarity to article 20 of the Model Law."); Clark, *supra*, § 7[1], at 67 (describing differences between Section 1520 and Model Law Article 20).

■ As the language of Section 1520 is apparently not directly patterned on the Model Law's Article 20, the Model Law is of less relevance to Section 1520's interpretation than it is to other Chapter 15 provisions that are directly patterned on the Model Law. Therefore, Section 1508's rule of interpretation is obviously less applicable where the contested issues "do not implicate provisions of chapter 15 derived from the Model Law," but instead "arise from provisions that Congress specially added in adapting the Model Law to the U.S. bankruptcy code." *Pro–Fit Int'l Ltd.,* 391 B.R. 850, 857 (Bankr.C.D.Cal.2008). *See also In re Loy,* 380 B.R. 154, 164 (Bankr.E.D.Va.2007)(interpreting difference in language between Model Law and Chapter 15 as evidence of congressional intent to diverge from the Model Law).

While the Court's consideration of the Model Law is obviously limited by the significant lack of similarity, to the extent that the Court considers the Model Law, it notes that Article 20 provides that the right to transfer property ceases on the date of recognition, not on the date of the commencement of the foreign proceeding. Thus, the relevant provision in the Model Law actually runs counter to the Trustee's theory.

### b. UK regulation

The same interpretive difficulty arises when considering Article 20 of the UK Regulation ("Relief that may be granted upon application for recognition of a foreign proceeding"), which is directly patterned on the Model Law's Article 20. As with the Model Law, Article 20 of the UK Regulation contains language that is significantly different than that of Section 1520 and is therefore unhelpful to Section 1520's interpretation. However, the Court also notes that under the UK Regulation's Article 20, like the Model Law, the right to transfer ceases on the date of recognition, not on the date of the commencement of the foreign proceeding.[13]

The English Trustee actually ignores the UK Regulation's Article 20 and instead points the Court to Article 23 ("Actions to avoid acts detrimental to creditors") to support his argument. (Appellant Br. 11–13.) The UK Regulation's Article 23, which governs the avoidance of preferential, fraudulent and other detrimental transactions, directs the court to consider the date of the opening of the foreign insolvency proceeding in certain circumstances. For example, an "undervalue transaction" may be avoided if it occurred within two years prior to the opening of the foreign insolvency proceeding. UK

---

**13.** Article 20(1)(c) of the UK Regulation states: "[u]pon recognition of a foreign proceeding that is a foreign main proceeding, subject to paragraph 2 of this article—the right to transfer, encumber or otherwise dispose of any assets of the debtor is suspended."

Regulation Art. 23(3)(b). The problem with using the UK Regulation's Article 23 to support the English Trustee's argument is that Article 23 is derived from the Model Law's Article 23 and corresponds to Section 1523 of the U.S. Bankruptcy Code, not to Section 1520. As such, it holds little relevance in interpreting the language in either Model Law Article 20 or Section 1520. That the UK Regulation treats fraudulent and preferential transactions under Article 23 differently than it does post-bankruptcy transactions under Article 20 is certainly not surprising, and is of no import here.[14]

To summarize, under Article 20 of the Model Law and Article 20 of the UK Regulation, the debtor must not transfer property after the *date of recognition*. However, neither the Model Law nor the UK Regulation are useful in determining the meaning of the term "commencement of the case" under Section 1520(a) and Section 549, because the language in Section 1520 diverges significantly from that in the Model Law.

### 4. equitable considerations

The English Trustee also argues that if the "commencement of the case" does not refer to the foreign proceeding, an absurd result is reached that is unfair to foreign creditors.[15] *See Stone v. Instrumentation Laboratory,* 591 F.3d 239, 243 (4th Cir. 2009) (noting that courts will not adopt an interpretation of a statute that leads to an "absurd result"). Not unmindful of the policy arguments underlying the English Trustee's position, the Court nevertheless is also mindful that Congress, in regulating cross-border insolvencies, must balance often divergent interests, including those of foreign creditors and those of domestic creditors. On one side of the equation is the need to prevent debtors from taking unfair advantage of foreign creditors by transferring property interests that rightfully belong to the foreign bankruptcy estate. On the other side of the equation is the desire to protect local creditors and purchasers, who may or may not be aware of the foreign insolvency proceeding and its ramifications. And of great importance to all parties is an orderly bankruptcy process that is efficient, predictable, and unencumbered by extended delays. It is not for the Court to second-guess Congress's policy decisions.

Congress's modifications of the Model Law to suit domestic needs provide some insight into its balancing of these various interests. In drafting Chapter 15, Congress highlighted the importance of the recognition of foreign proceedings, a concern not as apparent in the Model Law. *See In re Iida,* 377 B.R. at 256–57 (noting that Chapter 15 differs from the Model

14. Even if Model Law Article 23 were relevant to this discussion, the fact that Congress diverged significantly from Article 23 when drafting Section 1523 would counsel against relying on Article 23 in interpreting Chapter 15. For example, Section 1523 requires the foreign representative to bring avoidance suits under other chapters of the Bankruptcy Code. 11 U.S.C. § 1523(a). *See* Bufford, *supra,* at 140 (noting that Section 1523 curtails the avoidance powers that are available in article 23 of the Model Law); Clark, *supra.* § 8[1], at 79 & n. 8 (noting that Section 1523 modifies the Model Law to address specific concerns of Congress).

15. The English Trustee also argues that transfers occurring after the date of recognition are "already prohibited" in Sections 1519, 1520, and 1521, and therefore a literal reading of the text creates a redundancy. The English Trustee presumably refers to Section 1521(a)(3), as the other provisions have nothing to do with post-recognition transfers. Section 1521(a)(3) suspends the right to transfer "to the extent the right has not been suspended under Section 1520(a)." Therefore, Section 1521(a)(3) does not "already prohibit[ ]" transfers proscribed in Section 1520. It gives the court discretion to grant additional supplemental relief not *already* provided by Section 1520(a).

Law in requiring recognition prior to relief); Alesia Ranney–Marinelli, *Overview of Chapter 15 Ancillary and Other Cross–Border Cases,* 82 Am. Bankr.L.J. 269, 270 (2008) (describing "unique provisions" in Chapter 15 that bar relief where there is no recognition). It also added more limits on the courts' power to avoid transactions. *See* Bufford, *supra* at 140. As commentators have suggested, these modifications could plausibly have arisen from a desire to protect domestic creditors and purchasers. *See* Clark, *supra,* § 7[1], at 67 n. 17 (conjecturing that Chapter 15's modifications to Article 20 were based on a desire to protect "initial transferees who had no prior knowledge of the avoidability of a given transfer"). Although not conclusive, these observations are consistent with the view that the statute reflects a balancing of the needs of the various parties involved in an ancillary case.

Furthermore, in analyzing the English Trustee's "absurdity" argument, the Court notes that Section 1520 is not the only avenue available to the English Trustee in obtaining relief. If the Deed of Trust constitutes a fraudulent transfer, as alleged, then Section 1523 provides that the English Trustee may seek avoidance of the fraudulent transfer in a bankruptcy case under another chapter of the Bankruptcy Code. In fact, the English Trustee asserts that he has already commenced a Chapter 7 case against Mr. Loy. (Appellant Br. 6 n. 6.)

### 5. summary

Section 1520(a)(2) and Section 549(a) mandate avoidance of transfers occurring after the "commencement of the case," but do not define when the "commencement of the case" occurs. The Court sees three possible interpretations: 1) the date of the "commencement" of the foreign proceeding, which the English Trustee asserts is the date of adjudication, 2) the date of recognition in the United States bankruptcy court, which in this case was made effective as of the date of filing of the Chapter 15 proceeding, or 3) the actual date of filing for recognition, which may or may not be the effective date of recognition.

The Court concludes that, for purposes of Chapter 15 application, the "commencement of the case" under Section 549 is the date of filing in the United States Bankruptcy Court of a petition for recognition of the foreign insolvency proceeding. Section 1504, although not specifically defining "commencement of the case" as a term of art, provides that a Chapter 15 case is commenced with the filing of the petition for recognition. While a Chapter 15 ancillary case is indeed limited, Chapter 15's formal structure and its integration with the rest of the Bankruptcy Code make it likely that the "commencement of the case" refers to an ancillary case. Although the Model Law, and other statutes and regulations derived from it, such as the UK Regulation, are generally useful in interpreting Chapter 15, they provide limited guidance to interpretation of Section 1520 because Section 1520's language is significantly different than that of the corresponding sections in the Model Law and the UK Regulation. Finally, designating the filing date of the petition for recognition as the "commencement of the case" does not create an absurd result.

### IV. Conclusion

The sole issue on appeal is the interpretation of Sections 1520(a)(2) and 549(a)(1) of the Bankruptcy Code. The Court does not rule on the English Trustee's assertion that the October 24, 2007 Deed of Gift was fraudulent (Appellant Br. 8), which is an issue governed by other provisions of the Bankruptcy Code. Neither does the Court decide whether the October 24, 2007 Deed of Gift should have been avoided under Section 1507, which gives the bankruptcy court flexibility to grant other relief to the

foreign representative "consistent with the principles of comity." 11 U.S.C. § 1507(b). Although the English Trustee mentions this provision in his brief (Appellant Br. 8, n. 8), he does not state whether he believes the Bankruptcy Court erred in not applying Section 1507, and if so, the nature of the error. Finally, the English Trustee has not requested that the law of the United Kingdom be applied to the October 24, 2007 transfer, and the Court does not rule on the appropriateness of such application.

The Court therefore finds that the October 24, 2007 Deed of Gift is not avoidable under 11 U.S.C. §§ 1520(a)(2) and 549(a)(1) because it occurred prior to the English Trustee's filing for recognition on October 28, 2007. Accordingly, the Bankruptcy Court's ruling as to APN 08–05011 is **AFFIRMED.** The Court does not reach the Bankruptcy Court's holding in APN 08–05002.

It is SO **ORDERED.**